IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| JOHN V. HALTOM, | |
|---|---|
| Plaintiff, | 8:15-CV-428 |
| vs. | |
| KAREN PARKS, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on Mental Health Associates LLC's motion for summary judgment (filing 101) and motion to dismiss (filing 135). The Court will grant the motion for summary judgment, and deny the motion to dismiss as moot.

BACKGROUND

The plaintiff's allegations are briefly summarized as follows. In 2009, the Nebraska Department of Health and Human Services (DHHS) began investigating domestic disputes between the plaintiff, John Haltom, and his former wife. Haltom claims that as part of its investigation, DHHS conspired with private health practitioners to violate Haltom's constitutional rights and, ultimately, take away his children. These actions were purportedly motivated by DHHS's "long standing resentment" of Haltom, stemming from past litigation, his operation of adult entertainment businesses, and his "political ambitions within the State of Nebraska and its state departments." Filing 6 at 3; 8, 9. To accomplish its goals, at least according to Haltom, DHHS and the other defendants—all acting "under color of state law"— partook in widespread misconduct ranging from the production of false

medical evaluations to unwarranted "invasions" into Haltom's home. Filing 6 at 5-6, 12. As a result, Haltom says he has experienced "extreme emotional and physical distress" and is "[unable] to function in society." Filing 6 at 5.

From that, Haltom asserts 37 separate purported claims for relief against 49 named and 7 unnamed defendants, all premised on alleged federal constitutional violations brought pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3), or 1986.[1] *See* filing 6. Some defendants have already been dismissed on motions to dismiss, filing 81, and others were dismissed for failure to serve process, filing 97.

One of the remaining defendants is "Mental Health Associates LLC" (MHA). MHA was composed of Dr. James C. Carmer (one of the previously dismissed named defendants) and three other independent mental health practitioners, who entered into an office-sharing arrangement. Filing 103 at 3;[2] filing 102-6 at 1-2. They leased an office suite together and made administrative decisions about rent, insurance, and support staff. Filing 103 at 3. But they were all self-employed: they maintained their own files, treated their own patients, and did not pool or share the fees they collected. Filing

---

[1] Section 1983 creates a civil action for those deprived by a person acting under color of state law of a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1985(2) creates a civil action for those who were injured by a conspiracy to interfere with the administration of justice in a state court. *See Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986). Section 1985(3) creates a civil action for those injured by a private conspiracy to deny equal protection of the laws. *Harrison*, 780 F.2d at 1429. And § 1986 imposes liability on those who have knowledge of a § 1985 conspiracy and power to prevent it, but fail to do so. *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1223-24 (8th Cir. 2015).

[2] Failure to file a brief precludes the opposing party from contesting the moving party's statement of facts. NECivR 7.1(b)(1)(C).

103 at 4; filing 102-6 at 2. They did not intend to create any business association, and merely used the name "Mental Health Associates" for convenience as a d/b/a name. Filing 103 at 3; filing 102-6 at 2. They never created a "formal partnership, joint venture, corporation, limited liability company, registered trade name, or legal entity whatsoever." Filing 103 at 4; *see* filing 102-1; filing 102-2; filing 102-7.

MHA moves for summary judgment on two grounds: it claims that it is not an entity capable of being sued, and that it cannot be held vicariously liable for the alleged actions of those associated with it. *See* filing 103. MHA also moves to dismiss the case for failure to substitute parties as required by Fed. R. Civ. P. 25(a). *See* filing 136.

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.*

## DISCUSSION

Pursuant to Fed. R. Civ. P. 17(b), the question of what constitutes an unincorporated association for capacity purposes will be determined in accordance with the law of the state in which the court is sitting. 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1564; *see Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378, 380-81 (8th Cir. 2013). And under Nebraska law,

> [a]ny company or association of persons formed for the purpose of (1) carrying on any trade or business, (2) holding any species of property in this state, or (3) representing employees in collective bargaining with employers, and not incorporated, may sue and be sued by such usual name as such company, partnership or association may have assumed to itself or be known by.

Neb. Rev. Stat. § 25-313.

In reading a Nebraska statute, the Court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Goynes*, 876 N.W.2d 912, 918 (Neb. 2016). The Court cannot read anything plain, direct, or unambiguous out of the statute. And here, given the plain statutory language, it is difficult to say that MHA was not formed to carry on a trade or business, despite the practical and financial independence of its members. It is even more difficult to say that an office-sharing arrangement, the primary function of which seems to have been to

lease property, was not "holding any species of property" within the meaning of § 25-313. For instance, if litigation arose out of a slip-and-fall on MHA's premises, it is hard to conceive that § 25-313 would not be implicated.

On the evidence presented, the Court finds that MHA is an unincorporated association with the capacity to be sued under Nebraska law—at least, within the scope of its operation.[3] *Cf. Jardine v. Superior Court*, 2 P.2d 756, 760-64 (Cal. 1931); *Curtis v. Albion-Brown's Post 590 Am. Legion of Ill.*, 219 N.E.2d 386, 389 (Ill. App. Ct. 1966); *Lawson v. Clawson*, 9 A.2d 755, 758 (Md. 1939); *Corleto v. Shore Mem'l Hosp.*, 350 A.2d 534, 539 (N.J. Super. Ct. Law Div. 1975).

But that implicates the question of vicarious liability. As a general matter, there is no liability for the conduct of one who, although a servant in performing other services, is doing work as to which there is no control or right to control by the master. *Johnson v. Evers*, 238 N.W.2d 474, 476 (Neb. 1976). And more specifically, with respect to the constitutional claims asserted by Haltom, a business association acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies: the proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed—§ 1983 does not sanction tort by association. *Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014).

---

[3] Having concluded that MHA is subject to suit under Nebraska law, the Court need not consider whether it could be subject to suit to enforce a substantive right under federal law, pursuant to Rule 17(b)(3)(A).

The Supreme Court's decision in *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania* is instructive with respect to vicarious liability. 458 U.S. 375 (1982). The plaintiffs in *Gen. Bldg. Contractors* were racial minorities alleging racial discrimination in the operation of a "hiring hall" created by a labor union and construction industry employers, and an apprenticeship program operated by the union and several construction trade associations. *Id.* at 378. But the Supreme Court held that 42 U.S.C. § 1981, under which the plaintiffs' claims were asserted, could only be violated by purposeful discrimination. *Id.* at 391. And the Court rejected the idea that vicarious liability could be imposed, explaining that

> [t]he doctrine of *respondeat superior* . . . enables the imposition of liability on a principal for the tortious acts of his agent and, in the more common case, on the master for the wrongful acts of his servant. Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. A master-servant relationship is a form of agency in which the master employs the servant as an agent to perform service in his affairs and controls or has the right to control the physical conduct of the other in the performance of the service. [The Union], in its operation of the hiring hall, simply performed no function as the agent or servant of the associations. The record demonstrates that the associations themselves do not hire operating engineers, and never have. Their primary purpose is to represent certain employers in contract negotiations with the Union. Even if the doctrine of *respondeat superior* were broadly applicable to suits based on § 1981, therefore, it would

not support the imposition of liability on a defendant based on the acts of a party with whom it had no agency or employment relationship.

*Id.* at 392 (citations and quotations omitted). Further, the Court explained,

> [a]t the core of agency is a "fiduciary relation" arising from the consent by one person to another that the other shall act on his behalf and subject to his control. Equally central to the master-servant relation is the master's control over or right to control the physical activities of the servant.

*Id.* at 393 (citations and quotations omitted). So, there was no basis to hold the employers or trade associations liable for discrimination in the apprenticeship program—despite the employers' funding of the program, and the associations' right to appoint half the apprenticeship programs' trustees—"without evidence that an agency relationship existed at the time the [apprenticeship program] committed the acts on which its own liability was premised." *Id.* at 395.

The lack of an agency relationship is equally fatal here. MHA's purported liability is premised wholly on Haltom's allegations against Dr. Jennie Cole-Mossman. Filing 6 at 39. Cole-Mossman was presumably one of the associating mental health practitioners who formed MHA, although Haltom doesn't say so, and Cole-Mossman was dismissed from this litigation after Haltom failed to serve process on her. Filing 97. But the evidence is clear that the practitioners sharing MHA "did not share or delegate responsibility for the professional treatment of their patients or clients." Filing 102-6 at 2. Haltom's allegations do not establish, and the evidence

refutes, any basis for imputing an agency relationship between Cole-Mossman and MHA in any capacity relating to her allegedly unlawful acts. Simply put, there are no allegations against MHA suggesting that it, separately, committed any constitutional torts. And the evidence establishes that there is no basis to hold MHA liable for Cole-Mossman's alleged acts, given that MHA had no control over Cole-Mossman's practice.

The absence of any allegation of a "policy or custom" of MHA, and the evidence establishing that Cole-Mossman's alleged acts cannot "fairly be said to represent official policy," *Monell*, 436 U.S. at 694, is dispositive of Haltom's § 1983 claims, as is MHA's lack of supervisory power or authority over Cole-Mossman, *see Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). The Court is aware of differing authority on whether *Monell*'s elevated "policy or custom" standard is equally applicable to § 1985 claims. *Compare Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014), *and Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012), *and Argento v. Vill. of Melrose Park*, 838 F.2d 1483, 1495 (7th Cir. 1988), *abrogated on other grounds by Peacock v. Thomas*, 516 U.S. 349 (1996), *with Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). But Haltom's claims fail even under traditional *respondeat superior* principles. *See Scott*, 140 F.3d at 1284. And that lack of control is also fatal to Haltom's § 1986 claims, which require not only a predicate § 1985 violation, but "power to prevent or aid in preventing" it. *See Humphrey v. Court of Common Pleas of York Cty., Pa.*, 640 F. Supp. 1239, 1244 (M.D. Pa. 1986); *see also Keefe*, 785 F.3d at 1223-24.

Based on those findings, the Court will grant MHA's motion for summary judgment (filing 101) and dismiss Haltom's claims against MHA with prejudice. Having reached that conclusion, the Court need not decide MHA's motion to dismiss (filing 135), and will deny it as moot.

IT IS ORDERED:

1.  MHA's motion for summary judgment (filing 101) is granted.

2.  Haltom's claims against MHA are dismissed with prejudice.

3.  "Mental Health Associates, LLC" is terminated as a party.

4.  MHA's motion to dismiss (filing 135) is denied as moot.

Dated this 16th day of February, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge